IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PACTIV CORPORATION, and<br>PACTIV CORPORATION 2010/2011<br>SEVERANCE BENEFITS PLAN,<br><br>           Plaintiffs,<br><br>    v.<br><br>CHAD RUPERT,<br><br>           Defendant.<br>_____<br>CHAD RUPERT,<br><br>           Counterclaim-Plaintiff,<br><br>    v.<br><br>PACTIV CORPORATION,<br>PACTIV CORPORATION 2010/2011<br>SEVERANCE BENEFITS PLAN, and<br>REYNOLDS GROUP HOLDINGS, LTD.,<br><br>           Counterclaim-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 11 C 7247<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **OPINION AND ORDER**

Plaintiffs Pactiv Corporation ("Pactiv") and the Pactiv Corporation 2010/2011 Severance Benefits Plan (the "Plan"), an employee benefits plan subject to the provisions of the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"), brought this action for declaratory relief alleging that defendant Chad Rupert ("Rupert") has no right or claim for employment severance benefits because he refused to sign a release of claims containing a non-competition undertaking. Rupert filed a counterclaim for declaratory and monetary relief against Pactiv, the Plan and counterclaim defendant Reynolds Group Holdings, Ltd. ("Reynolds") claiming that under the terms of a merger agreement between Pactiv and Reynolds, Rupert became entitled to unconditional severance benefits as a third-party beneficiary of a merger agreement that existed prior to the adoption of the Plan. Rupert seeks relief under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115, and alternatively under ERISA. Pactiv replies that Rupert is not a third-party beneficiary of the merger agreement and that ERISA preempts the Illinois statute.

The parties agree the Plan is an ERISA benefit plan and also agree that the merger agreement is not itself a plan under ERISA. Plaintiffs claim for declaratory relief that the Plan applies and that they may condition payment of severance benefits on agreeing to a non-competition provision would fall under ERISA jurisdiction. *See* 29 U.S.C. §§ 1132(a)(3), 1132(e). Even if there is no jurisdiction under ERISA, there apparently would be diversity jurisdiction.

Plaintiff Pactiv is a Delaware corporation with it principal place of business in Illinois. Defendant Rupert, who was employed in Illinois, was a resident and citizen of Iowa at the time this action was filed. The amount in controversy exceeds $75,000. For diversity purposes, an ERISA plan's citizenship is ordinarily that of its trustee. *May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 599 (7th Cir. 2002). In this case, though, the Plan is not a trust, it is an unfunded plan that pays benefits out of the general assets of Pactiv. *See Fenwick v. Merrill Lynch & Co.*, 2009 WL 995760 *3 (D. Conn. April 9, 2009); *In re Washington Mut., Inc.*, 450 B.R. 490, 503 (Bankr. D. Del. 2011). The Plan also is not an unincorporated association with members for which citizenship would be that of its members. No case has been found discussing the determination of the citizenship of this type of ERISA plan. Pactiv is the Plan's sponsor and administrator, so the Plan's citizenship presumably would be the same as that of Pactiv. Under ERISA, this court has jurisdiction over plaintiffs' Complaint. Alternatively, there would also appear to be diversity jurisdiction. Since there is jurisdiction over plaintiffs' complaint, there is jurisdiction over Rupert's counterclaims as well.

Both sides contend that the facts are not in dispute. The case is now before the court on cross motions for summary judgment. On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. ***Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.***, 555 U.S. 271, 274 n.1 (2009); ***Malen v. MTD Prods., Inc.***, 628 F.3d 296, 303 (7th Cir. 2010); ***Stokes v. Bd. of Educ. of City of Chicago***, 599 F.3d 617, 619 (7th Cir. 2010). The burden of establishing a lack of any genuine issue of material fact rests on the movant. ***Ponsetti v. GE Pension Plan***, 614 F.3d 684, 691 (7th Cir. 2010); ***Outlaw v. Newkirk***, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he or it will bear the burden of proof at trial. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986); ***Montgomery v. Am. Airlines, Inc.***, 626 F.3d 382, 389 (7th Cir. 2010). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. ***Celotex***, 477 U.S. at 324; ***Freundt v. Allied Tube & Conduit Corp.***, 2007 WL 4219417 *2 (N.D. Ill. Nov. 29, 2007); ***O'Brien v. Encotech Constr.***, 2004 WL 609798 *1 (N.D. Ill. March 23, 2004). Also, it is not sufficient to show evidence of purportedly

disputed facts if those facts are not plausible in light of the entire record. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 594-95 (7th Cir. 2007); *Yasak v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *Lampley v. Mitcheff*, 2010 WL 4362826 *6 (N.D. Ind. Oct. 27, 2010).

For purposes of each side's motion for summary judgment, the following facts are undisputed. Rupert worked for Pactiv for eleven years. At the time of his termination in July 2011, he was general manager of its Slide-Rite Closure division in Illinois.

On November 16, 2010, the stockholders of Pactiv approved a merger agreement, the effect of which made Pactiv an indirect, wholly owned subsidiary of Reynolds. Pursuant to the terms of Section 6(c) of the merger agreement the parties agreed to provide, for a period of one year, employee salary and benefits equal to those existing immediately prior to the effective date of the merger. Pactiv's severance benefits were required by the merger agreement to be set forth in a disclosure statement which became Section 6.4(d) (Severance Policy) of the merger agreement. Section 6.4(d) provides, in pertinent part, as follows:

> 1. A Non-Union Employee terminated without cause shall be paid, in addition to all amounts

accrued or required by law to be paid, a sum equal to (i) the number of years such Non-Union Employee has been employed by the company (or its Affiliates, including entities acquired by the Company), rounded to the nearest month <u>times</u> two (such number the "<u>Severance Period</u>") <u>times</u> (ii) such Non-Union Employee's weekly compensation, provided the amount computed by clause (i) shall not be less than four nor greater than 26.

2. If such Non-Union Employee is eligible for an annual bonus in the year of termination, such person shall be paid a pro-rated amount of his or her bonus, at "target" if such bonus is incentive based, as well as any accrued but unpaid bonuses.

Section 9.6 of the merger agreement contains a clause stating that all disclosures are complete (there are no other oral or written terms or conditions) and that the merger agreement and disclosure schedules, with certain specific exceptions, "are not intended to confer upon any Person other than the parties hereto any rights or remedies hereunder." Section 9.8 of the merger agreement provides the agreement will be construed in accordance with Delaware contract law.

After the merger, on December 1, 2010, Pactiv adopted the Plan. It is an unfunded welfare benefit severance plan subject to ERISA. The Plan expressly

provides that it is governed by Illinois law except to the extent such law is preempted by ERISA. The Plan document states that it serves as the summary and description of the Plan and for all purposes under ERISA. The Plan document states the same severance benefits set forth in the merger agreement and also contains the following provision:

> To receive severance pay and benefits under the Plan and unless provided for otherwise in an applicable appendix, an eligible employee must submit to the Plan Administrator (defined below) a signed Separation Agreement within the consideration period set forth in the Separation Agreement, but not before his or her Separation Date. The Separation Agreement shall be **in a form acceptable to the Company**, and shall be provided to the eligible employee in connection with the eligible employee's termination of employment under this Plan.

(Emphasis Supplied.)

The Plan also provides:

> An eligible employee has no vested right to severance pay or benefits under the Plan. The Company reserves the right in its sole discretion to amend or terminate the Plan at any time. The Plan may be amended in any respect at any time, retroactively or otherwise, by the Vice President and Chief Human Resources Officer, in writing. Notwithstanding the foregoing, no Plan amendment may retroactively reduce the benefits to which an eligible employee was entitled under the Plan as of his or her Separation Date.

After the adoption of the Plan, Pactiv terminated Rupert's employment without cause because he declined to relocate to Appleton, Wisconsin. It is undisputed that he then became eligible for severance benefits. On his last date of employment, Rupert was informed that, in order to receive severance benefits, he was required to sign a document entitled "Separation Agreement and Release of All Claims" that contained a non-competition undertaking that reads as follows:

12. **Restrictive Covenants**

    a. For a period of one (1) year following the Separation Date, Employee shall not directly or indirectly, on behalf of Employee or any other person, company or entity:

        i. participate in the research and/or development of any products or services that are similar to, or competitive with any products or services for which Employee had direct or indirect product or service research or development responsibilities while working at Company.

        ii. provide services to any person or entity that engages in any business that is similar to, or competitive with, Company's business if doing so would require Employee to inevitably use or disclose Company's Confidential Information.

        iii. solicit the sale of, sell, or otherwise provide any products or services that are similar to or competitive with products or services offered by, manufactured by, designed by, or distributed by Company, to any person, company or entity which was a customer or potential customer of Company for such products or services and with whom Employee had

direct contact or about whom Employee learned Confidential Information regarding those products or services at any time during his employment with Company.

        iv. hire, solicit, attempt to persuade or communicate with any employee of Company, or any person who was an employee of Company during the twelve (12) months prior to the Separation Date, to leave the employ of Company or otherwise interfere with the performance of their duties for Company.

    b.    Company may, in its sole discretion, permit Employee to engage in certain work or activity described in this paragraph 12, if and only if Employee first provides Company with written evidence satisfactory to Company, including assurances from any new employer, that the contribution of Employee's knowledge to that work or activity will not cause Employee to disclose, base judgment upon, or use Company's Confidential Information, Employee shall not engage in such work or activity unless and until Employee receives written consent from Company.

The proposed Separation Agreement provides that Rupert is not required to sign it and will still receive pension benefits, insurance he is otherwise entitled to receive and payment for unused vacation time regardless of whether he signs it. However, it also provides that he can only receive severance pay if he signs the agreement and that any such payments will be forfeited if the agreement is subsequently breached.

It is undisputed that a non-competition restrictive covenant was never a condition of Rupert's employment with Pactiv. The first mention of such an undertaking was at the time of his termination. The proposed Separation Agreement was first provided to Rupert on July 29, 2011, which was his date of termination. The non-competition provisions were included at the direction of Mark Kitzis, vice-president and general manager of Specialty Business for Reynolds Presto Products Inc. Kitzis stated in a declaration: "Due to the nature of Mr. Rupert's position and the knowledge he possessed, I determined that it was necessary to include restrictive covenants in Mr. Rupert's Separation Agreement and Release of All Claims. I considered the requests Mr. Rupert made to narrow the scope of the restrictive covenants. However, Pactiv and Mr. Rupert were not able to reach agreement on the scope of the restrictive covenants." The additional discussions occurred after Rupert's employment was terminated. The proposed Separation Agreement was unsigned, but had a signature line for Jerry Lindsey, who was a "Senior Manager" in Human Resources at the time.

The first question to be considered is Rupert's standing as a third-party beneficiary under the Pactiv merger agreement.[1] Relying on a California case,

---

[1] As is discussed below, Rupert is entitled to severance benefits under the Plan. The severance benefits are the same dollar amount under either the

***Prouty v. Gores Tech. Group,*** 18 Cal. Rpt. 3d 178, 184-86 (Cal. App. 2004), and an ERISA case, ***Halliburton Co. Benefits Comm. v. Graves,*** 463 F.3d 360 (5th Cir. 2006), *clarified,* 479 F.3d 360 (5th Cir. 2007), Rupert claims third-party beneficiary rights can exist notwithstanding an express provision to the contrary in a merger agreement. These cases do offer some support for ignoring a clause disclaiming third-party beneficiary rights in cases involving benefit claims. However, each of the cases presents a different factual background. In ***Prouty***, despite the third-party disclaimer language, other language in the pertinent documents expressed an intent to benefit third parties and there was also testimony of one of the merger parties that there was specific intent to protect such beneficiaries. In ***Halliburton,*** the action was brought under ERISA to establish benefit rights under an amended ERISA plan, not third-party rights under the related merger agreement. *See id.,* 463 F.3d at 375-76. In the present case, Delaware law applies.

Under Delaware law, enforceable third-party benefits require, among other things, that "the intent to benefit the third party must be a material part of the

---

merger agreement or the Plan. An IWPCA claim, though, provides for penalties and also has a different attorney fees standard than under ERISA. Therefore, it is necessary to resolve the state law claims.

parties' purpose in entering into the contract." *Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 2008 WL 4182998 *4 (Del. Ch. Sept. 11, 2008) (quoting *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268 *5 (Del. Ch. April 17, 2001), quoted in *Comrie v. Enterasys Networks, Inc.*, 2004 WL 293337 *2 (Del. Ch. Feb. 17, 2004)). A general disclaimer of third-party benefits can be overcome if there is a specific grant of benefits to a third-party that was central to the transaction (*e.g.*, a shareholder or member of a merging entity) and not just incidental to the transaction. *Amirsaleh*, 2008 WL 4182998 at *5. Here, the principal purpose of the agreement was the merger of two companies, with employee benefits being incidental to the merger. Also, while there is a general third-party disclaimer in § 9.6(b) of the merger agreement, it also specifically identifies those provisions in the merger agreement for which third-party benefits are not disclaimed. Severance benefits are not excluded from the disclaimer. The merger agreement does not provide for severance benefits that are enforceable by an employee. Rupert has no claim directly under the merger agreement.

Plaintiffs contend any IWPCA claim is preempted by ERISA. If Rupert's IWPCA claim was based on the terms of the Plan that would likely be true. Rupert's IWPCA claim, though, is based on the severance provisions of the

merger agreement. Since Rupert has no enforceable rights under the merger agreement, his IWPCA claim also fails on the merits.

Covenants-not-to-compete are limitations on the ability to work. They are disfavored under Illinois law and may not be implied in employment contracts but must be clearly stated and strictly construed and cannot be overbroad in activity covered, geography or temporal coverage. *See* ***Zabaneh Franchises, LLC v. Walker***, 972 N.E.2d 344, 349-51 (Ill. App. 4th Dist. 2012); ***Triumph Packaging Group v. Ward***, 834 F. Supp. 2d 796, 814-16 (N.D. Ill. 2011); ***Pampered Chef v. Alexanian***, 804 F. Supp. 2d 765, 781 (N.D. Ill. 2011).[2] The ERISA Plan document on which Pactiv relies to impose a future non-competition undertaking as a condition to receiving benefits does not authorize or require such an obligation.

Reserving the right to have a separation agreement in a "form acceptable to the Company" is not notice to an ERISA beneficiary that a non-competition covenant could be required as a condition to receive benefits. What is here proposed is not a matter of "form;" it is a substantial limitation. Based on the

---

[2]It is unnecessary to decide whether, despite the Plan's express adoption of Illinois law, federal common law applies and, if so, whether it is any different from Illinois law. As set forth below, ERISA requires that the terms of a plan and any amendment be in writing.

Pactiv declarations, it clearly appears that an officer decided to impose the clause because of Rupert's occupation. ERISA plans are not subject to ad hoc interpretation or amendment; the terms of an ERISA plan must be stated in writing. 29 U.S.C. §1102(a); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 817-18 (7th Cir. 2010); *Bandak v. Eli Lilly & Co. Ret. Plan*, 587 F.3d 798, 802 (7th Cir. 2009). Plaintiffs contend Rupert had no vested interest in the severance benefits and the Plan could be amended. Plaintiffs, though, point to no actual written amendment to the Plan. At most, they can rely on the proposed Separation Agreement which was in writing. The Separation Agreement itself is not an amendment. Morever, it is not a writing of a Vice President and Chief Human Resources Officer, who would be the person or persons authorized to make an amendment. To the extent a subsequent amendment occurred, it would not apply to Rupert. The Plan expressly provides that amendments reducing severance benefits do not apply retroactively; an employee is entitled to enforce the terms of the Plan in effect on the last day of his or her employment.

Under the written terms of the Plan in effect on Rupert's last date of employment, he was not required to agree to a non-compete clause in order to be

entitled to the severance benefits provided for in the Plan. Rupert is entitled to a declaratory judgment stating his entitlement to severance benefits under the Plan without undertaking a non-competition covenant. He is also entitled to a monetary judgment awarding him the benefits. It is undisputed that Rupert's severance benefits, based on years, salary and bonuses, would be a total of $99,676.58.

To the extent Rupert is seeking prejudgment interest, he must move to amend the judgment within the time permitted by Fed. R. Civ. P. 59(e). Unless by agreed motion with counterdefendants, Rupert must support any such request with a computation of prejudgment interest as well as a legal argument that he is entitled to prejudgment interest. *See* **Fritcher v. Health Care Serv. Corp.**, 301 F.3d 811, 820 (7th Cir. 2002); **Holmstrom v. Metro. Life Ins. Co.**, 615 F.3d 758, 779 (7th Cir. 2010).

Since Rupert had some degree of success on his ERISA counterclaim, he could be entitled to attorney fees if plaintiffs' position was not substantially justified. *See* 29 U.S.C. 1132(g); **Hakim v. Accenture U.S. Pension Plan**, 2012 WL 4738980 *3-4 (N.D. Ill. Oct. 3, 2012). Any motion for attorney fees must comply with the procedural requirements and time limits set forth in Local Rule 54.3.

IT IS THEREFORE ORDERED that the cross motions for summary judgment [34, 39] are each granted in part and denied in part. The Clerk of the Court is directed to enter final judgment as follows: (1) in favor of defendant-counterplaintiff and against plaintiffs-counterdefendants (a) declaring that Chad Rupert is entitled to severance benefits under the Pactiv Corporation 2010/2011 Severance Benefits Plan without being required to enter into a non-competition agreement; (b) awarding Chad Rupert $99,676.58 against Pactiv Corporation and Reynolds Group Holdings, Ltd.; and (c) dismissing plaintiffs' cause of action with prejudice and (2) in favor of counterdefendants and against counterplaintiff dismissing counterplaintiff's third-party beneficiary and Illinois Wage Payment and Collection Act claims with prejudice.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER  /  , 2012