IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACTIV CORPORATION, and <br> PACTIV CORPORATION 2010/2011 <br> SEVERANCE BENEFITS PLAN, <br> <br> Plaintiffs, <br> v. <br> <br> CHAD RUPERT, <br> <br> Defendant. <br> ****************************************** <br> CHAD RUPERT, <br> <br> Counterclaim-Plaintiff, <br> v. <br> <br> PACTIV CORPORATION, <br> PACTIV CORPORATION 2010/2011 <br> SEVERANCE BENEFITS PLAN, <br> REYNOLDS GROUP HOLDINGS LIMITED <br> <br> Counterclaim-Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 1:11-cv-7247 |

## PLAINTIFFS' BRIEF ON REMAND

The issue on remand is whether Chad Rupert may recover on a claim that he expressly and repeatedly disavowed and waived, starting with his Answer to the Amended Complaint for Declaratory Relief by Pactiv Corporation ("Pactiv") and the Pactiv Corporation 2010/2011 Severance Benefits Plan (the "Severance Plan" or "Plan"). The answer is "No." Rupert's claim also fails on the merits in any event.

**I.      Rupert Repeatedly Waived Any Claim Under The Severance Plan.**

Rupert is a former Pactiv employee who left the company and went to work with a competitor. As the Court knows, Rupert refused to sign a "Separation Agreement," required by the Plan to receive severance benefits, because the Plan Administrator determined the Agreement

should include non-compete conditions. Pactiv and the Plan then brought this action, seeking declaratory relief that in requiring such conditions, the Administrator acted within the broad discretion conferred by the ERISA-governed Plan and upheld in countless ERISA decisions.

In his Answer, Rupert disavowed any claim to benefits under the ERISA-governed Plan. Indeed, he "expressly denie[d] that the Severance Plan applies to Rupert or otherwise controls the outcome in this case." Answer ¶ 24. Rupert thereby waived any claim under the Plan. Any potential issue on whether Rupert might be entitled to benefits under the Plan—including any question about the Administrator's exercise of discretion in determining that Rupert's Separation Agreement should include non-compete restrictions—thus disappeared from the case.

Rupert instead sought severance benefits on entirely different theories. His Counterclaim added Reynolds Group Holdings Limited ("RGHL") as a counterclaim defendant, and alleged he was entitled to severance payments as a claimed third-party beneficiary of an RGHL-Pactiv merger agreement ("Merger Agreement") and a "Disclosure Schedule" to that Agreement. He also claimed such benefits under the Illinois Wage Payment and Collection Act ("IWPCA"). His only reference to ERISA was an "alternative" theory that if the *Merger Agreement* were somehow deemed an ERISA plan, he might have an ERISA claim under that hypothetical "plan.' But both Rupert and Pactiv agreed that the Merger Agreement was *not* an ERISA plan.

On the later cross-motions for summary judgment, Rupert repeatedly reaffirmed his wavier and disavowal of any claim under the actual ERISA Plan. Paragraph 56 of Pactiv's statement of undisputed facts described Severance Plan provisions on employee Separation Agreements. Rupert's response said "the statements in Paragraph 56 are irrelevant" because his "right to severance benefits arises under" the Merger Agreement and Disclosure Schedule. Dk. 42 at 16. He added: "The 2010/2011 Severance Benefits Plan Document is irrelevant." *Id.*

This is but one of numerous examples throughout Rupert's responses to Pactiv's undisputed facts statement. *See id.* at 5 (Resp. to ¶ 15) ("The 2010/2011 Benefits Plan Document is irrelevant"); *id.* (Resp. to ¶ 16) (same); *id.* at 6 (Resp. to ¶ 17) (same); *id.* at 16-17 (admitting Pactiv's ¶ 57 statements on Severance Plan terms, but calling these "irrelevant" because Rupert's "right to severance benefits arises under" Merger Agreement and Disclosure Schedule); *id.*. at 17 (identical admission and characterization as "irrelevant" in response to ¶ 58 statement that Rupert's employment ended after Plan's adoption).

Having insisted that he was making no claim under the ERISA-governed Plan, Rupert accordingly devoted next-to-no time on any ERISA claim or argument. He focused instead on his state-law Merger Agreement and IWPCA theories.

No court has agreed with any of Rupert's actual claims and arguments in this case. This Court correctly held Rupert was not a third-party beneficiary of the Merger Agreement. The Seventh Circuit affirmed. This Court correctly held Rupert had no valid claim under the IWPCA. The Seventh Circuit affirmed. Based on the claims Rupert actually made, the case should be over.

The only reason it is not is that the Court's prior summary judgment ruling also stated that Rupert *was* entitled to benefits under the actual Severance Plan, because the Court believed that Plan included no "notice to an ERISA beneficiary that a non-competition covenant could be required as a condition to receive benefits." Dk. 47 at 13. Respectfully, this ruling came as a complete surprise to Pactiv, and no doubt to Rupert as well. Because Rupert had disavowed from the outset any claim under the Plan (relying instead on his Merger Agreement and IWPCA theories), neither party had briefed the issue on which the Court—after correctly rejecting Rupert's actual arguments—made its additional ruling. As shown *infra*, the predicate for the

3

Court's ruling on that unraised and unbriefed issue—*i.e.*, that the Plan included no notice that a non-compete provision might be included in a Separation Agreement—is in fact mistaken.

The Seventh Circuit vacated the ruling that Rupert was entitled to benefits under the Plan, because that ruling came without notice to Pactiv on a claim Rupert had disavowed and forfeited. For purposes of the appeal, however, the appellate panel treated the prior ruling as a decision by this Court "to relieve Rupert of that forfeiture." Slip op. at 9. Though the Court's prior decision "erred by doing this without notice to Pactiv," the panel said this Court "did not abuse its discretion by electing not to enforce the forfeiture." *Id.* It therefore remanded so this Court could "give the required notice"—*i.e.*, the notice required if in fact the Court is electing not to enforce Rupert's forfeiture of any claim under the Plan—"and then entertain arguments based on the language" of the actual Severance Plan. *Id.*

Pactiv respectfully believes that in ruling on the claim Rupert had waived, the Court was not making a deliberate decision to "relieve" Rupert of that forfeiture. Among other reasons, Pactiv believes the Court would indeed have given the required notice to Pactiv of any such decision. Pactiv also believes the prior ruling in fact traces to understandable confusion arising from Rupert's summary judgment briefing, which frequently refers to the "plan"—but in doing so is not referencing the actual Severance Plan (under which Rupert had waived any claim), but instead a supposed benefits "plan" Rupert erroneously contended was created by the Merger Agreement (and was *not* governed by ERISA). Such confusion is the more understandable because neither side though it necessary to state in summary briefing what both sides simply knew to be true—namely, that Rupert had waived any claim under the Severance Plan itself (which is why neither party briefed that issue).

4

In any event, however, the Court unquestionably has discretion on remand to determine if it in fact chooses to relieve (or "continue" to relieve) Rupert from his consistent, repeated waiver of any claim under the Severance Plan. Pactiv respectfully submits that Rupert is not entitled to such extraordinary solicitude. Rupert has explicitly disclaimed from the outset that he was entitled to any benefits under the actual Severance Plan. He has persistently called the Plan and its terms "irrelevant." He so stated not only in his Answer, but also on multiple occasions in responding to Pactiv's statement of undisputed summary judgment facts. The litigation proceeded throughout with both sides understanding that any claim under the Severance Plan had been disposed of and was out of the case—until that issue was unexpectedly (and mistakenly) addressed in the summary judgment ruling.

When a party's pleadings disavow that the party is making a given claim, both the Court and other parties are entitled to rely on the disavowal and proceed with that claim no longer being in the case. Any contrary rule yields chaos. Litigation is protracted, complicated and expensive enough, for courts and litigants alike, to revive years later claims that one party waived at the very beginning. Pactiv respectfully submits that the Court's doing so in its prior ruling—without Rupert even requesting, much less showing any basis for, such extraordinary relief—was inadvertent. But regardless, the Court has discretion now to hold Rupert to necessary, routine, baseline standards that apply to every litigant.

## II. The Severance Plan *Did* Include Notice That Non-Compete Provisions Could Be Required In A Separation Agreement.

Any claim by Rupert under the Severance Plan would fail on the merits even had he not waived it.

The Plan confers on the Plan Administrator discretionary authority to "construe the terms of the Plan," and to make final, conclusive eligibility determination in his "sole discretion:"

5

> The Plan Administrator has the discretionary authority to determine eligibility for Plan benefits and to construe the terms of the Plan, including making factual determinations. Benefits under the Plan shall be payable only if the Plan Administrator determines, in his sole discretion, than an eligible employee is entitled to them. The decisions of the Plan Administrator are final and conclusive with respect to all questions concerning the Plan's administration.

Dk. 1-1 at 6.

When an ERISA plan vests an administrator with such discretion, judicial review of eligibility determinations is narrowly circumscribed. Courts must "review the administrator's decision under the deferential arbitrary and capricious standard." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 498 U.S. 101, 115 (1989)). "Under this 'least demanding form of judicial review,' [courts] will not set aside a denial of benefits based on any reasonable interpretation of the plan. *Id.* (quoting *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599, 608 (7th Cir. 1999); other citation omitted).

Further, as *Hess* and other Seventh Circuit decisions command, "reasonableness" itself is given the broadest reading. "Indeed, whether or not we would have reached the same conclusion is irrelevant; we will overturn the fiduciary's denial of benefits only if it is 'completely unreasonable.'" *Id.* (quoting *Ruiz v. Cont'l Cas. Co.*, 400 F.3d 986, 991 (7th Circ. 2005)).

Thus, courts will step-in if an administrator makes-up arbitrary, capricious eligibility conditions lacking any reasonable basis in the plan. But when a plan *does* indicate eligibility may include certain conditions, the administrator's discretionary construction of the plan, and his discretionary eligibility determinations, must be upheld unless "completely" unreasonable.

This cannot be said of the administrator's discretionary determinations under the Plan here. It is undisputed that Rupert's signing a Separation Agreement was a condition to receiving severance benefits. In its prior decision, the Court believed the Plan's requirement that the Separation Agreement be in "a form acceptable to the Company" was insufficient to justify a

6

non-competition covenant. That issue, however, need not be revisited on remand, because the prior decision's further belief—that the Plan included no "notice to an ERISA beneficiary that a non-competition covenant could be required as a condition to receive benefits"—was mistaken.

As shown, Rupert waived any claim under the Plan in his Answer, a waiver he repeatedly reaffirmed in his summary judgment filings. Any claim based on the Plan itself therefore was (and is) gone from the case, and there was no reason for Pactiv to address it. Hence, when the Court—likely misled by Rupert's confusing use of the term "plan" to refer to a so-called non-ERISA "plan" under the Merger Agreement—nonetheless decided to rule on whether Rupert had a claim under the actual Plan, it did not have the benefit of briefing on that issue.

Such briefing would have pointed out provisions of the Plan that the prior decision overlooked. In its "Return of Severance Payments" section, the Plan explains that such return will be required if the company "paid by mistake of fact, mistake of law, or contrary to the terms of the Plan." Dk.1-1 at 5. The second of the section's two paragraphs then advises employees:

> In addition, in the event an eligible employee breaches the Confidential Information covenant described above, *any portion of the eligible employee's executed Separation Agreement, or any non-compete, non-solicitation, confidentiality or other restriction contained therein* or contained in any other agreements entered into between the eligible employee and the Company, (i) the payment of severance pay and benefits to such eligible employee shall cease, (ii) the Company shall have no further obligation at any time to pay severance pay or benefits under the Plan, and (iii) the eligible employee shall be required to return to the Company any severance pay and benefits the Company paid the eligible employee less one hundred dollars ($100).

Dk. 1-1 at 6 (emphasis added).

To use the Court's formulation in the prior decision, this provision unquestionably *does* give "notice to an ERISA beneficiary that a non-competition covenant could be required as a condition to receive benefits." It explicitly states that violation of "any portion of the executed Separation Agreement," including "any non-compete … or other restriction contained therein,"

7

will require return of severance payments. Anyone reading the sentence would know that Separation Agreements may include such restrictions. The sentence makes no sense otherwise.

But governing law does not even require that "anyone" reading the Plan provisions would reach that obvious conclusion. Nor does the case turn on *Rupert's* reading of the provision, or the believability of his now claiming that he supposedly did not "understand" what it meant. The dispositive question is far narrower and far simpler: Was this reading by *the Plan Administrator*, vested with "discretionary authority to determine eligibility for Plan benefits and to construe the terms of the Plan," at least a *reasonable* one? As shown, courts "will not set aside a denial of benefits based on *any* reasonable interpretation of the plan. *Hess*, 423 F.3d at 658 (emphasis added). Indeed, an administrator's view will be overturned "*only* if it is '*completely* unreasonable.'" *Id.* (emphasis added).

The Administrator's construction of the straightforward language of the Plan, which the prior decision overlooked, was correct. But "whether or not [a court] would have reached the same conclusion is irrelevant." *Id.* At a minimum, the Administrator's view was "reasonable;" certainly, it cannot credibly be characterized as "completely unreasonable." This disposes of any claim by Rupert under the Plan, even had he not repeatedly waived any such claim.

### III. Rupert's Arguments That Notice Was "Insufficient" Are Meritless.

Rupert will likely reprise his claim raised on appeal (but not explored or decided by the Seventh Circuit) that *Cirulis v. Unum Corp.*, 321 F.3d 1010 (10th Cir. 2010), and *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), show that notice was "insufficient." Neither case supports his view.

In *Cirulis*, severance benefits were conditioned on signing a release; and the discharged employee was tendered a release that included a non-solicitation clause. In marked contrast to

8

the instant case, however, nothing in the *benefit plan* indicated any such restriction might be included. Rather, there was no reference to the restrictive clause until it first appeared in the release tendered months after the employee learned he was being terminated. *See* 321 F.3d at 1014-15 (the *plan* provided "*no notice*" of such restriction; rejecting argument that "plan administrator may condition benefit payments on terms that do not appear on the face of a benefit plan") (original emphasis).

At least one Circuit has reached the opposite result, upholding an administrator's discretion to require a non-solicitation restriction even though plan documents contained no reference to such a restriction. *See Friz v. J & H Marsh & McLennan, Inc.*, 2 Fed. App. 277 (4th Cir. 2001). But here, it makes no difference if the Seventh Circuit follows *Cirulis*. Even courts within the Tenth Circuit, where *Cirulis* is controlling authority, hold that it does not apply when plan documents *do* contain references to a challenged restriction. *See Foster v. PPG Indus.*, 2010 WL 3432249, at *3 n.5 (N.D. Okla. Aug. 31, 2010) (*Cirulis* administrator "denied benefits based on a requirement not found in *any* of the plan documents;" distinguishing situation where matters "complained of by [beneficiary] were included in documents incorporated into the Plan") (original emphasis); *Owen v. Regence Bluecross Blueshield of Utah*, 388 F. Supp. 2d 1335, 1340 (D. Utah. 2005) (*Cirulis* "deal[t] with a situation where a new condition is sprung on a beneficiary without notice;" distinguishing situation where beneficiaries were "made aware" of provision by plan documents "and were not otherwise denied some benefit which was expected based upon the language of the plan").

Here, as shown, the Plan language overlooked by the prior decision explicitly says Separation Agreements may contain non-compete and other restrictions. There is nothing obscure or hidden about this notice. The Plan is only 11 pages long. It is written in simple,

9

declarative prose, not legalese. Notice that Separation Agreements may include non-compete restrictions is not tucked-away in a footnote or fine print. It is in a two-paragraph section titled "Return of Severance Payments" that expressly explains the circumstances in which such return will be required. Those delineated circumstances expressly include violation of Separation Agreement terms. These in turn are expressly listed as including "non-compete, non-solicitation, confidentiality or other restrictions[s]" in such an Agreement.

The *Cirulis* employee could say: "Where in the world is this non-solicitation requirement coming from? There is *nothing* in the plan about this." Neither Rupert nor anyone else could credibly say that after reading the 11-page Plan and its straightforward "Return of Severance Payments" section here.

Rupert's attempted reliance on *Curtiss-Wright v. Schoonejongen* is no better. His argument rests on broadly misinterpreting and misapplying a single clause of a single sentence from the Supreme Court decision, which in turn is quoting a single sentence from a congressional report: "'[A] written plan is to be required in order that every employee may, *on examining the plan documents,* determine exactly what his rights and obligations are under the plan.'" 514 U.S. at 83 (quoting report; emphasis added by Court).

Rupert does not rely on the clause the Supreme Court emphasized. Rather, he posits that the phrase "exactly what his rights and obligations are" requires that an ERISA plan must detail in advance precisely what every benefit provision and condition will be for every employee covered by the Plan. Thus, Rupert told the Seventh Circuit (and will likely repeat on remand) that notice of potential non-compete requirements was insufficient because the Plan "doesn't specify the duration, geographic scope, industry, or category of employees it might pertain to,"

and thus "does not permit an employee to determine 'exactly' what his rights and obligations are under the Plan." Rupert Br. of Appellee/Cross-Appellant 13 (quoting *Curtiss-Wright*).

No ERISA case holds this. Indeed, Rupert's view is at war with ERISA precedent and ERISA policy. Details on duration, geographic scope, and the like can of course be pertinent in addressing whether *particular* covenants may or may not be overbroad. But no ERISA authority does or reasonably could require such specificity as a condition of sufficient *notice* that such provisions may be included in a non-union employee separation agreement. There is no question that ERISA plans are permitted to condition entitlement to severance benefits on provisions of this sort. But requiring advance specificity at the level of detail Rupert suggests would render it virtually impossible even to draft such a plan delineating the different pertinent circumstances and accompanying appropriate provisions for different non-union employees.

Further, even if such a plan could be drafted, its "administration" would be irreconcilable with the need for "exercise of discretion" and "individualized investigation and assessment" that are hallmarks of whether a benefits plan is governed by ERISA in the first place. *Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 632 (7th Cir. 2001). Rupert is suggesting that "notice" requires the kind of "mechanical, nondiscretionary application of the plan's terms" that precludes ERISA application to begin with. *Id.*

Likewise, extensive authority commanding deference to plan administrator discretion—including the Supreme Court's *Firestone Tire* decision and Seventh Circuit holdings in *Hess* and a host of other cases—is rendered irrelevant. There is no need to defer to "any reasonable interpretation of the plan" if adequate "notice" requires that every outcome for every covered individual, in every potential circumstance, be spelled-out in advance, such that discretion or interpretation is unnecessary (indeed, in Rupert's view of ERISA, effectively impermissible).

11

Embracing Rupert's thesis would also have adverse consequences extending far beyond this case. Employers throughout the country have benefit plans that permit severance benefits for non-union employees to be conditioned on non-compete, non-solicitation or comparable restrictions, to be assessed in a plan administrator's discretion on an individualized, case-by-case basis (considering, for example, such factors as an executive's position and his or her access to confidential information). Holding that "notice" of this possibility is "insufficient" unless a plan spells-out in advance precisely the scope, duration and other details of the restrictions that may be reasonable for each covered executive calls all such plans into question. This would disrupt established plan administration for thousands of employers who have chosen to provide severance benefits for non-union employees, so long as a departing executive agrees (if the plan administrator reasonably determines that it is appropriate) not to abuse the employer's trust by using confidential information to aid a competitor.

Further, the brunt of the adverse consequences would be borne not by employers, but by covered employees. Adopting Rupert's theory yields a windfall to him, and a disaster for countless thousands of other non-union employees now covered by plans similar to Pactiv's.

Under ERISA, employers may, for any reason and at any time, adopt, modify or terminate welfare plans. *Curtiss-Wright*, 514 U.S. at 78. A provision purporting to vest welfare benefits and limit the employer's ability to alter or amend must be stated in the plan documents in clear, express terms. *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 632 (7th Cir. 2004). A plan's silence on the issue yields a "presumption against vesting." *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 544 (7th Cir. 2000).

If ERISA were held to require what Rupert asserts, employers will not respond by attempting the impossibly complex (and impossibly expensive) task of trying to delineate in plan

12

documents, for every executive, "exactly" the duration, geographic scope, and other details of non-compete and comparable conditions appropriate for that particular executive's entitlement to severance benefits upon departure. Employers will instead terminate severance benefits plans for management employees such as Rupert.

### IV. In The Alternative (And At Minimum), Pactiv Should Now Be Allowed Discovery On The Severance Plan Claim Rupert Had Expressly Waived.

Given the Plan's actual language, including the broad discretion conferred on the Plan Administrator and its express statement that Separation Agreements may include non-compete and other restrictions, judgment should be entered for Pactiv on the claim Rupert's own Answer disavowed and waived. But even if not, Pactiv respectfully submits that at a minimum, it is evident that summary judgment cannot be entered for Rupert. Elemental fairness would require reopening discovery on the claim that Rupert denied he was even making, and that Pactiv therefore had no reason to explore in earlier discovery or address in earlier briefing.

Such discovery need not be extensive or unduly delay the proceedings. Its topics will be focused. In particular, the focus will be on facts previously unexplored (again, because there was no reason to) on the reasonableness of the Plan Administrator's discretionary determination that Rupert's Separation Agreement should include non-compete conditions. As shown, the Administrator's decision cannot be overturned unless Rupert can demonstrate it was "completely unreasonable." *Hess*, 423 F.3d at 658. At the very least, Pactiv should be afforded discovery on matters pertinent to the very thing Rupert has to prove before he can win.

One such matter, of course, involves what Rupert himself actually knew and understood (or reasonably should have) about severance benefits requirements under the Plan. Another key area involves the circumstances surrounding Rupert's decision to depart Pactiv and to go to work with a competitor. What communications did Rupert have with the Pactiv competitor? What

communications did Rupert and/or that competitor have with Pactiv customers? Were Rupert's relationships with Pactiv's customers, and his first-hand knowledge of Pactiv's confidential information, among the benefits Rupert offered this competitor with whom he was working? What would Rupert and knowledgeable executives of the competitor and customers testify on such questions? What do their pertinent records show?

Pactiv believes Rupert's relationships with Pactiv customers, and his knowledge of confidential Pactiv information, were indeed among the reasons for his decision to depart, and to go to work with a Pactiv competitor. This obviously underscores the reasonableness of the Administrator's decision on the appropriateness of non-compete provisions as a condition to Rupert's receiving severance benefits from Pactiv. Certainly, it refutes any notion that this discretionary decision was "completely" unreasonable, which is what Rupert must establish to overturn it.

Again, Pactiv believes Rupert has already failed to make that showing (or to demonstrate any material fact issue about the reasonableness of the Administrator's discretionary decision), thus entitling Pactiv to judgment as a matter of governing ERISA law. But if the Court is not prepared to enter such judgment now, Pactiv respectfully submits that under any view of the equities, it is entitled to discovery from Rupert, the competitor with whom he works and customers on matters such as those outlined above, which (due to Rupert's prior waiver of any claim under the Plan) have never previously been pertinent to or explored in this litigation.

DATED: October 3, 2013 Respectfully submitted,

                                                           PACTIV CORPORATION,
                                                           PACTIV CORPORATION 2010/2011
                                                           SEVERANCE BENEFITS PLAN, and
                                                           REYNOLDS GROUP HOLDINGS LIMITED


                                                           *s/ Norma W. Zeitler*

Norma W. Zeitler
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313
(312) 759-5646 (FAX)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 3, 2013 a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Vernon P. Squires
>Bradley & Riley PC
>2007 First Avenue SE
>P.O. Box 2804
>Cedar Rapids, IA  52406-2804
>
>James B. Carroll
>Steven C. Haubner
>James B. Carroll & Associates
>7800 West 95th Street, Suite 2E
>Hickory Hills, IL 60457

>>*/s/ Norma W. Zeitler*

CHDS01 NZEITLER 866295v1